# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AMICA MUTUAL INSURANCE COMPANY, on behalf of itself and all others similarly situated as subrogree of Brian Marchiony | ) ) ) | CIVIL CASE DOCKET NO.: 3:22-cv-00751-SVN |
| Plaintiff | ) ) ) | |
| Vs. | ) ) | |
| WATERWORKS OPERATING CO., LLC | ) ) | JANUARY 13, 2023 |
| Defendant | ) | |

## WATERWORKS OPERATING CO., LLC'S THIRD PARTY COMPLAINT AS TO ETABLISSEMENTS TETARD-HAUDIQUEZ-GRISONI

Waterworks Operating Company, LLC ("Waterworks"), by and through its Counsel of record, hereby alleges, states, and avers:

## NATURE OF THE ACTION

1.     Pursuant to Federal Rules of Civil Procedure 14 and 18, Waterworks, as Third-Party Plaintiff, brings this action against Third Party-Defendant Etablissements Tetard-Haudiquez-Grisoni ("THG") for contribution, indemnification, damages, and declaratory relief.

2.     In its First Amended Complaint for Class Action ("Complaint"), Plaintiff Amica Mutual Insurance Company, on behalf of itself and all others similarly situated as subrogee of Brian Marchiony, ("Plaintiff") alleges Waterwork's Easton Classic Low Profile Three Hole Deck Mounted Lavatory Faucets (the "Faucet") is defective and poses a risk of failure that can lead to property damage. *See* Ex. A, Plaintiff's First Amended Complaint for Class Action and Jury Trial Demand, *Amica Mutual Insurance Co. et al., v. Waterworks Operating Co., LLC*, No. 22-cv-00751-SVN (D. Conn. Aug. 5, 2022).

3.     In the event Waterworks is found liable for any sum of money arising out of Plaintiff's Complaint, THG, as the manufacturer of the allegedly defective Faucet, is responsible for any sum adjudged against Waterworks.

4.     Further, THG breached its manufacturing contract with Waterworks. This breach and THG's other wrongful conduct, which serves as the basis of Plaintiff's claims, harmed Waterworks.

5. Waterworks seeks judgment against THG for all sums that may be adjudged against Waterworks in Plaintiff's favor and damages for THG's breach of contract and other wrongful conduct.

## JURISDICTION AND VENUE

6. The Court has subject matter jurisdiction over Waterwork's claims based on diversity of citizenship under 28 U.S.C. sections 1332(a)(2). THG is a foreign company headquartered in France and the amount in controversy exceeds $75,000, exclusive of interest and costs, as alleged in the Complaint. The Court also has supplemental subject matter jurisdiction over Waterworks's claims under 28 U.S.C. section 1367(a) because Waterworks's third-party claims are so related to the Plaintiff's claims that they form part of the same case or controversy under Article III of the United States Constitution.

7. The Court has personal jurisdiction over THG under Connecticut's long-arm statute, Conn. Gen. Stat. § 33-929, as THG entered into contracts with Waterworks in Connecticut relevant to this action and THG delivered the Faucets to Waterworks in Connecticut. *Id.* § 33-929(f). In addition, THG has such contacts with the state of Connecticut that it does not "offend traditional notions of fair play and substantial justice" to subject THG to litigation in Connecticut. *International Shoe Co. v. Washington*, 326 U.S. 310, 314 (1945). THG has two authorized resellers in Connecticut and conducts business in Connecticut; and THG had a reasonable expectation that the Faucets would be marketed, sold and distributed to customers in the State of Connecticut, like Brian Marchiony, whose claims are the subject matter of the underlying Complaint.

8. Venue in this Court is proper under 28 U.S.C. 1391(b)(2) because this is the Judicial District in which a substantial part of the acts and omissions giving rise to the underlying action occurred within this district.

## PARTIES

9. Defendant and Third-Party Plaintiff, Waterworks Operating Co., LLC ("Waterworks"), is a limited liability company incorporated in the state of Delaware with a principal place of business located at 60 Backus Avenue, Danbury, CT 06810.

10. Third-Party Defendant, Etablissements Tetard-Haudiquez-Grisoni ("THG"), is a simplified joint stock company under French law, registered in the Trade and Companies Register or Amiens with its registered office located at 35, rue Tournière, 80530 Béthencourt-sur-Mer, France.

## PLAINTIFF'S UNDERLYING ACTION

11. Plaintiff's allegations in the Complaint are re-stated herein for the purposes of reference only. Waterworks reserves its right to deny and each and every allegation set forth in the Complaint, including but not limited to those described herein.

12.     On August 5, 2022, Plaintiff filed the Complaint against Waterworks alleging the Faucet is defective. *See* Ex. A.

13.     In the Complaint, Plaintiff alleges that, as a result of the alleged defect, the Faucet poses a substantial risk of failure permitting the unrestricted flow of water into the home, causing catastrophic water damage to real and personal property.

14.     Plaintiff alleges that Waterworks developed, designed, manufactured, assembled, tested, marketed, promoted, sold, and/or distributed the allegedly defective Faucet to Plaintiff and the proposed Classes throughout the United States.

15.     Plaintiff further alleges that as a result of Waterworks' acts or omissions, Plaintiff's insured and the putative class were exposed to substantial risk of significant property damage.

16.     The Complaint asserts that Plaintiff, its insured, and the putative class have suffered, and will continue to suffer, injury-in-fact and lost money as a direct result Waterworks conduct.

17.     Plaintiff alleges that in or about July of 2020, a Faucet installed in Brian Marchiony's home failed, causing significant loss from water damage. Plaintiff reportedly paid Mr. Marchiony, its insured, pursuant to the terms of the insurance policy that existed between the parties at the time of the loss.

18.     Plaintiff alleges that the Faucet is defective, in part, because it is subject to a process known as de-zincification, which is the result of a design and/or manufacturing defect.

19.     Further, Plaintiff alleges that this purported defect causes the Faucet to fail after exceptionally minimal usage, often resulting in catastrophic water damages to high-end and luxury residential homes.

## THG AND WATERWORKS' BUSINESS RELATIONSHIP

20.     Waterworks specializes in the sale, development and distribution of interior design products and equipment in the United States, including the supply of bathroom and kitchen faucets and sinks.

21.     THG manufactures and sells general taps and fittings, sanitary articles and all objects made of ferrous and non-ferrous metals, turning, screw-cutting, foundry and surface treatment of all metals and industrial materials.

22.     On February 23, 1999, THG and Waterworks entered into a Manufacturer Production Agreement for THG to manufacture plumbing fixtures for Waterworks (the "February 23, 1999 contract"). *See* Ex. B. The February 23, 1999 contract had a term of five years, which automatically renewed for an additional five year term commencing upon expiration of the immediately preceding term unless the agreement was otherwise

terminated. *See* Ex. B at p. 3. The February 23, 1999 contract has not been terminated by Waterworks or THG.

23.     In the February 23, 1999 contract, THG expressly warranted that it would "conduct all aspects of manufacture and distribution" of products like the Faucet "in a manner consistent with industry customs, standards, and practices for product similarly positioned and priced." Exhibit B at p. 2.

24.     In addition, under the February 23, 1999 contract, THG agrees to "indemnify and hold harmless Waterworks for any and all costs and claims arising from or related to (i) [THG's] activities conducted pursuant to this Agreement and/or (ii) any breaches by [THG] of this Agreement." Ex. B at p. 3.

25.     Pursuant to the February 23, 1999 contract, THG designed, manufactured, assembled, and supplied Waterworks with the Faucet, which includes the Faucet that was installed in Mr. Marchiony's property and is the subject of the Complaint. Waterworks was involved in the design of the decorative elements of the Faucet, but did not design the side body valve of the Faucet.

26.     Waterworks labeled, marketed, distributed, and sold the Faucet. Waterworks did not make any alterations or modifications to the manufacturing or design of the Faucet once supplied by THG.

## THIRD PARTY COMPLAINT

27.     Pursuant to Federal Rule of Civil Procedure 14, Waterworks files this Third-Party Complaint against THG.

28.     Waterworks denies liability to the Plaintiff, but to the extent the Faucet is found to be defective, that is the responsibility of THG as the designer, manufacturer, assembler, and supplier of the Faucet.

29.     THG impliedly warranted to purchasers, such as Waterworks, and homeowners, such as the Plaintiff's insured, that all plumbing and accessory products sold by THG, were free from manufacturing defects in materials and workmanship.

30.     THG also expressly and impliedly warranted that the Faucets were merchantable and/or fit for their intended uses. THG is a merchant with respect to goods of the kind involved in the Plaintiff's alleged loss. THG knew or had reason to know of the particular purpose for which the goods were required, and that Waterworks was relying on THG's skill, expertise, and/or judgment to select and/or furnish suitable goods to homeowners like Plaintiff's insured.

## CAUSES OF ACTION

### COUNT ONE: COMMON LAW INDEMNIFICATION

31.    Waterworks re-alleges, and incorporates by reference the allegations contained in all of the preceding paragraphs as if expressly alleged and set forth herein.

32.    The damages alleged by Plaintiff, its insured, and putative class, if any, were a direct and proximate result of THG's negligence and breaches of duty, including:

   a.    Failing to properly design the Faucet and/or its parts;

   b.    Failing to properly manufacture the Faucet and/or its parts;

   c.    Failing to properly test or inspect the Faucet and/or its parts;

   d.    Misrepresenting that the Faucet was fit for its intended use when THG knew or should have known that the Faucet could fail;

   e.    Failing to warn consumers and Waterworks that the Faucet could cause and/or contribute to water losses and/or water damage;

   f.    Failing to make appropriate recommendations concerning the use and/or maintenance of the Faucet;

   g.    Failing to adequately test the valves to assess, determine, eliminate, and/or reduce the risk and/or likelihood of water leaks;

   h.    Failing to comply with applicable federal, state, and/or municipal statute and/or regulations concerning the design and manufacture of the Faucet; and

   i.    Otherwise failing to exercise reasonable care under the circumstances that then and there existed.

33.    As the designer, manufacturer, assembler, and supplier of the Faucet, THG had exclusive control of the Faucet during the manufacturing process, to the exclusion of Waterworks.

34.    Waterworks did not know and had no reason to anticipate or know that THG would negligently design or manufacture the Faucets, or otherwise fail to exercise reasonable care in supplying Waterworks with the Faucets. Waterworks reasonably relied on THG's experience in supplying faucets, showers, sinks, bathtubs, and other sanitary products.

WHEREFORE, Waterworks seeks to be indemnified and demands judgment against THG for all sums that may be adjudged against Waterworks, plus costs and reasonable attorney's fees.

## COUNT TWO: CONTRACTUAL INDEMNIFICATION

35.     Waterworks re-alleges, and incorporates by reference the allegations contained in all of the preceding paragraphs as if expressly alleged and set forth herein.

36.     Under the February 23, 1999 contract, THG is obligated to "indemnify and hold harmless Waterworks for any and all costs and claims arising from or related to (i) [THG's] activities conducted pursuant to this Agreement and/or (ii) any breaches by [THG] of this Agreement." Ex. B at p. 3.

37.     THG is contractually obligated to indemnify and hold harmless Waterworks for any and all costs and claims related to Plaintiff's Complaint and allegations that the Faucet is defective, which arise from THG's design and manufacturing activities under the February 23, 1999 contract.

38.     THG is also contractually obligated to indemnify and hold harmless Waterworks for any and all costs and claims to the extent the Faucet is found to be defective.

WHEREFORE, Waterworks seeks to be indemnified and demands judgment against THG for all sums that may be adjudged against Waterworks, plus costs and reasonable attorney's fees.

## COUNT THREE: CONTRIBUTION

39.     Waterworks re-alleges, and incorporates by reference the allegations contained in all of the preceding paragraphs as if expressly alleged and set forth herein.

40.     In the event Waterworks is found liable for any sum of money arising out of Plaintiff's Complaint, Waterworks is entitled to contribution from THG for any sum of money adjudged against Waterworks pursuant to Conn. Gen. Stat. § 52-572h(h). THG, as the manufacturer of the allegedly defective Faucet, is wholly responsible for any sum adjudged against Waterworks.

WHEREFORE Waterworks requests its right of contribution for damages against THG in accordance with Conn. Gen. Stat. § 52-572h(h).

## COUNT FOUR: NEGLIGENCE

41.     Waterworks re-alleges, and incorporates by reference the allegations contained in all of the preceding paragraphs as if expressly alleged and set forth herein.

42.     As a designer, manufacturer, and supplier of general taps and fittings, sanitary articles and all objects made of ferrous and non-ferrous metals, turning, screw-cutting, foundry and surface treatment of all metals and industrial materials, THG owed Waterworks a duty to exercise the care of a reasonable designer, manufacturer, and supplier would use in the same circumstances.

43.     To the extent the Faucet is found to be defective, THG breached its duty to Waterworks by:

     a.     Failing to properly design the Faucet and/or its parts;

     b.     Failing to properly manufacture the Faucet and/or its parts;

     c.     Failing to properly test or inspect the Faucet and/or its parts;

     d.     Misrepresenting that the Faucet was fit for its intended use when THG knew or should have known that the Faucet could fail;

     e.     Failing to warn consumers and Waterworks that the Faucet could cause and/or contribute to water losses and/or water damage;

     f.     Failing to make appropriate recommendations concerning the use and/or maintenance of the Faucet;

     g.     Failing to adequately test the valves to assess, determine, eliminate, and/or reduce the risk and/or likelihood of water leaks;

     h.     Failing to comply with applicable federal, state, and/or municipal statute and/or regulations concerning the design and manufacture of the Faucet; and

     i.     Otherwise failing to exercise reasonable care under the circumstances that then and there existed.

44.     As a direct and proximate result THG's negligence and breaches of duty Waterworks was harmed.

WHEREFORE, in the event that the Faucet is found to be defective, Waterworks seeks judgment against THG in an amount that will adequately compensate Waterworks for its losses, together with interest, fees, and costs.

## COUNT FIVE: NEGLIGENT MISREPRESENTATION

45.     Waterworks re-alleges, and incorporates by reference the allegations contained in all of the preceding paragraphs as if expressly alleged and set forth herein.

46.     To the extent the Faucet is found to be defective, THG misrepresented that the Faucet was merchantable, fit for its intended uses, and/or designed and manufactured in accordance with the February 23, 1999 contract.

47.     To the extent the Faucet is found to be defective, THG knew, or should have known, that the Faucet was not merchantable, fit for its intended uses, and/or designed and manufactured in accordance with the February 23, 1999 contract.

48.     To the extent the Faucet is found to be defective, THG failed to exercise the care of a reasonable designer, manufacturer, and supplier in representing to Waterworks that the Faucet was merchantable, fit for its intended uses, and/or designed and manufactured in accordance with the February 23, 1999 contract.

49.     Waterworks reasonably relied on THG's representations that the Faucet was merchantable, fit for its intended uses, and/or designed and manufactured in accordance with the February 23, 1999 contract.

WHEREFORE, in the event that the Faucet is found to be defective, Waterworks seeks judgment against THG in an amount that will adequately compensate Waterworks for its losses, together with interest, fees, and costs.

## COUNT SIX: BREACH OF CONTRACT

50.     Waterworks re-alleges, and incorporates by reference the allegations contained in all of the preceding paragraphs as if expressly alleged and set forth herein.

51.     THG and Waterworks entered into a contract for THG to manufacture plumbing fixtures, like the Faucet, for Waterworks. *See* Exhibit B.

52.     Pursuant to its contractual obligations, supplemental purchase orders, THG designed, manufactured, assembled, and supplied Waterworks with the Faucets.

53.     At all relevant times, Waterworks performed its contractual obligations.

54.     To the extent the Faucet is found to be defective, THG materially breached its agreement with Waterworks when it failed to design, manufacture, assemble, and supply the Faucet "consistent with industry customs, standards, and practices for product similarly positioned and priced," as required by the  parties' agreement, supplemental purchase orders. *See* Ex. B. at p. 2.

55.     As a direct and proximate result of THG's breach, Waterworks sustained significant damages.

WHEREFORE, in the event that the Faucet is found to be defective, Waterworks seeks judgment against THG in an amount that will adequately compensate Waterworks for its losses, together with interest, fees, and costs.

## COUNT SEVEN: BREACH OF EXPRESS WARRANTIES

56.     Waterworks re-alleges, and incorporates by reference the allegations contained in all of the preceding paragraphs as if expressly re-alleged and set forth herein.

57.     THG designed, manufactured, assembled, and supplied Waterworks with the Faucet.

58. THG expressly warranted that it would "conduct all aspects of manufacture and distribution" of products like the Faucet "in a manner consistent with industry customs, standards, and practices for product similarly positioned and priced." Exhibit B at p. 2.

59. To the extent the Faucet is found to be defective, THG breached its express warranties because the Faucet was not manufactured in a manner consistent with industry customs, standards, and practices for product similarly positioned and priced.

60. THG's breach of warranties were the direct and proximate cause of the damages sustained by Waterworks.

61. THG received due notice of its breach of warranties.

WHEREFORE, in the event that the Faucet is found to be defective, Waterworks seeks judgment against THG in an amount that will adequately compensate Waterworks for its losses, together with interest, fees, and costs.

## COUNT EIGHT: BREACH OF IMPLIED WARRANTIES

62. Waterworks re-alleges, and incorporates by reference the allegations contained in all of the preceding paragraphs as if expressly re-alleged and set forth herein.

63. THG designed, manufactured, assembled, and supplied Waterworks with the Faucet.

64. THG impliedly warranted that the Faucet was of merchantable quality and/or fit for its intended uses. THG was a merchant with respect to goods of the kind like the Faucet.

65. To the extent the Faucet is found to be defective, THG breached its implied warranties because the Faucet was not of merchantable quality and/or unfit for its intended uses and purposes.

66. THG's breach of warranties were the direct and proximate cause of the damages sustained by Waterworks.

67. THG received due notice of its breach of warranties.

WHEREFORE, in the event that the Faucet is found to be defective, Waterworks seeks judgment against THG in an amount that will adequately compensate Waterworks for its losses, together with interest, fees, and costs.

## COUNT NINE: BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

68.     Waterworks re-alleges, and incorporates by reference the allegations contained in all of the preceding paragraphs as if expressly alleged and set forth herein.

69.     THG owed Waterworks an obligation to exercise good faith when designing, manufacturing, assembling, and supplying Waterworks with the Faucet. *See* Conn. Gen. Stat. § 42a-1-304.

70.     To the extent the Faucet is found to be defective, THG breached its implied covenant of good faith and fair dealing by designing, manufacturing, assembling, and supplying Waterworks with the Faucet that was not of merchantable quality and/or fit for its intended uses.

WHEREFORE, in the event that the Faucet is found to be defective, Waterworks seeks judgment against THG in an amount that will adequately compensate Waterworks for its losses, together with interest, fees, and costs.

## COUNT TEN: UNJUST ENRICHMENT

71.     Waterworks re-alleges, and incorporates by reference the allegations contained in all of the preceding paragraphs as if expressly re-alleged and set forth herein.

72.     Waterworks entered into a contract and paid THG good and valuable consideration to design, manufacture, assemble, and supply Waterworks with the Faucet that was merchantable and fit for its intended uses.

73.     To the extent the Faucet is found to be defective, THG was unjustly enriched when it failed to design, manufacture, assemble, and supply Waterworks with the Faucet that was of merchantable quality and fit for its intended uses.

WHEREFORE, in the event that the Faucet is found to be defective, Waterworks seeks restitution against THG in an amount equal to the value of the benefit Waterworks provided to THG.

## COUNT ELEVEN: DECLARATORY RELIEF

74.     Waterworks re-alleges, and incorporates by reference the allegations contained in all of the preceding paragraphs as if expressly alleged and set forth herein.

75.     To the extent Plaintiff is entitled to damages arising out of the Faucet, THG is solely responsible for Plaintiff's alleged damages due to its negligence, breach of express and implied warranties, negligent misrepresentation, and/or breach of contract, as set forth above.

WHEREFORE, Waterworks seeks declaratory judgment that any liability to Plaintiff arising out of this action is apportioned to THG, and that THG must indemnify and hold harmless Waterworks for all sums that may be adjudged against Waterworks, plus costs an reasonable attorney's fees related to Plaintiff's allegations.

## DEMANDS FOR RELIEF

WHEREFORE, Waterworks respectfully requests this Court enter judgment against THG and in favor of Waterworks, granting the following relief:

1. Determine that THG shall indemnify and hold harmless Waterworks for any and all judgments, fees, and costs arising from Plaintiff's allegations;

2. Determine that THG shall be responsible for all sums that may be adjudged against Waterworks, plus costs and any reasonable attorney's fees;

3. Award Waterworks damages in such amount to be determined at trial or as provided by applicable law; and

4. Such other relief in law or equity that this Court deems appropriate.

DEFENDANT and THIRD-PARTY PLAINTIFF,
WATERWORK OPERATING CO., LLC

By_____/s/ 21303_____
David A. Corbett, ct 21303
LITCHFIELD CAVO LLP
82 Hopmeadow Street, Suite 210
Simsbury, CT 06089
Tel: 860-413-2800
Fax: 860-413-2801
corbett@litchfieldcavo.com

## CERTIFICATION OF SERVICE

I hereby certify that on January 13, 2023, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

_____/s/ 21303_____
David A. Corbett

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AMICA MUTUAL INSURANCE | : | |
| COMPANY, a/s/o Brian Marchiony, | : | |
| on behalf of itself and all others | : | Case No. 3:22-cv-00751-SVN |
| similarly situated, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| WATERWORKS | : | |
| OPERATING CO., LLC, | : | |
| Defendant. | : | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR CLASS ACTION AND
JURY TRIAL DEMAND**

Now comes the Plaintiff Amica Mutual Insurance Company, as subrogee of Brian Marchiony, ("Plaintiff") by and through its undersigned counsel, individually and on behalf of all others similarly situated, alleges:

**NATURE OF THE ACTION**

1. This proposed class action involves the defects in Defendant's Easton Classic Low Profile Three Hole Deck Mounted Lavatory Faucets (the "Faucet"). The Faucet is a device by which a flow of liquid from a pipe can be controlled. The Faucet connects to the water line in residential bathroom sinks. The Faucets are defective and, as a result, the Faucet poses a substantial risk of failure permitting the unrestricted flow of water into the home, causing catastrophic water damage to real and personal property.

2. Defendant, Waterworks Operating Co., LLC ("Waterworks"), developed, designed manufactured, assembled, tested, marketed, promoted, sold, and/or distributed the defective Faucets to Plaintiff and the proposed Classes throughout the United States.

3. At all times material hereto, Defendant knew, or should have known, that the Faucets were defective, not safe, or even usable, for their intended purposes. As a result of Defendant's acts or omissions, Plaintiff's insured and the putative class were exposed to substantial risk of significant property damage.

4. Plaintiff and the Class have suffered, and will continue to suffer, injury-in-fact and lost money as a direct result of Defendant's conduct. Each Class member has either expended money to repair property damage caused by the defective Faucet, has paid for a defective Faucet when they otherwise would not have, or will be caused to expend money to replace the defective Faucets once these defects are publicly known.

5. This action seeks to both compensate those who have already suffered damages caused by the defective Faucets, and minimize any future damages by publicly disclosing the existence of the defects.

6. The central issue raised herein – whether Defendant's Faucets are defective – is common to the members of each proposed Class. There is an economy to class treatment of this central question because its resolution has the potential to eliminate the need for repeated litigation related to the Faucets' alleged defects and the reasons for its repeated failure.

## JURISDICTION AND VENUE

7. Jurisdiction is proper in this Court as Waterworks has necessary minimum contacts with the state of Connecticut. It has a physical place of business in Connecticut and conducts business in Connecticut, therefore satisfying the requirements for personal jurisdiction articulated in *International Shoe v Washington*, 326 US 310 (1945).

8. Jurisdiction is proper in this Court because the action arises under the laws of the United States, namely the Magnuson-Moss Warranty Act (15 U.S.C. § 2301 et seq). Jurisdiction is proper for all other causes of action in this Complaint not arising under the laws of the United States. 28 U.S.C. § 1367 provides for supplemental jurisdiction over any claim for which the Court does not have independent subject matter jurisdiction, where the claim is related to another claim for which the court does have independent jurisdiction. In the present action, all claims are related to the claim arising under the Magnuson-Moss Warranty Act.

9. This court has jurisdiction over this litigation pursuant to 28 U.S.C. § 1332(d), as the matter is brought as a class action under Rule 23 of the Federal Rules of Civil Procedure, and the sum of the amount in controversy exceeds $5,000,000. The requirement of minimal diversity is met as the parties are citizens of different states.

10. Venue is proper in this court pursuant to 28 U.S.C. § 1391 because at least one of the actions arises due to events which occurred in this District and some of the putative Class members may also reside, or have experienced losses in this District

## PARTIES

11. Plaintiff Amica Mutual Insurance Company  is an insurance company organized under the laws of the state of Rhode Island and is authorized to conduct business in the state of Connecticut.

12. At all times relevant Plaintiff insured real and personal property located at 95 Devonwood Lane, New Canaan, CT 06840 (the "Property").

13. Plaintiff's insured Brian Marchiony ("Marchiony") is an adult citizen and resident of the State of Connecticut, who resides at the Property. In approximately 2020, Marchiony purchased from Defendant and had installed in his home an Easton Classic Low Profile Three Hole Deck Mounted Lavatory Faucet. Defendant did not warn Marchiony, and the Faucet's label did not provide any warnings regarding the possibility of spontaneous failure, and did not contain warranty information.

14. Marchiony would not have purchased the Faucet and/or had it installed and/or otherwise exposed his real and personal property to catastrophic flooding had Defendant disclosed the propensity for the Faucet to spontaneously fail.

15. In July of 2020, Marchiony moved into a newly constructed home at the Property with his family. The Faucet had been installed in a second-floor bathroom.

16. In or about July of 2020 A significant loss resulted from this water damage. The water loss was the result of the failure of the Faucet purchased from Defendant.

17. Plaintiff Amica paid its insured Marchiony pursuant to the terms of the insurance policy in place at the time of the loss.

18. Defendant Waterworks Operating Co., LLC ("Waterworks"), is a limited liability company, incorporated and operating under the laws of the state of Delaware, with a principal place of business located at 60 Backus Avenue, Danbury, CT 06810. At all relevant times, Waterworks designed, manufactured, assembled, labeled, marketed, distributed, and/or sold the defective Faucets throughout the United States. Waterworks has business locations across the United States, from coast to coast.

## GENERAL ALLEGATIONS

19. The Defendant designed, manufactured, assembled, tested, labeled, distributed, and/or sold the defective Faucets with the specific intention and purpose that these defective Faucets be installed in homes and/or commercial properties and other dwellings

throughout the United States. In so doing, Defendant represented that the Faucets were safe, of merchantable quality, and fit for their intended and reasonably foreseeable purposes.

20. However, Defendant failed to disclose that its Faucets were defective, unsafe, and posed a substantial risk of failure resulting in catastrophic water damage.

21. The Faucets are high-end plumbing fixtures which sell for thousands of dollars on Defendant's website and in Defendant's physical store locations.

22. The Faucets are defective and unsafe. The Faucets are defective, in part, because they are subject to a process known as de-zincification. De-zincification is the result of a design and/or manufacturing defect which results in an improper and unsafe percentage of zinc in the copper-zinc alloy that made up the Faucets and component parts. This defect causes the Faucets to fail after exceptionally minimal usage, often resulting in catastrophic water damages to high-end and luxury residential homes.

23. As the designer, manufacturer, labeler, distributor, and/or seller of the defective Faucets, Waterworks is strictly liable for the damages caused by the Faucets that suffered from a manufacturing defect, posing an unreasonably dangerous risk to Plaintiff, its insured properties, and the putative Class.

## Plaintiff and the Classes Have Been Damaged

24. Plaintiff's insured and the class members have suffered actual harm as a result of Defendant's actions because the Faucets in their insured homes contain a material design defect which caused cracks in the Faucets which resulted in water leaks and property damage.

25. The Faucet defects, however, caused the Faucets owned by Plaintiff's insured and the class members to experience premature failure that is entirely disproportionate to the age of sink systems.

26. The injuries sustained by Plaintiff and the class members flow from the common facts surrounding Defendant's misconduct, including: (a) that the Faucets had defects that lead to spontaneous cracking and/or fracturing; (b) that the Faucets were defective for their intended use at the time of sale; and (c) Defendant did not provide adequate warning of defective condition of the Faucets.

27. The damages suffered by Plaintiff and the class members include, without limitation, amounts paid for the defective Faucets; amounts paid to remediate property damage caused by flooding; together with the cost to replace the defective Faucets, as well as incidental and consequential damages.

## CLASS ACTION ALLEGATIONS

28. Plaintiff brings all claims as pursuant to Fed. R. Civ. P. 23. The requirements of Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) are met with respect to the Classes defined below.

29. A Rule 23(b)(2) Class is appropriate when the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." (Fed. R. Civ. P 23(b)(2).

30. Declaratory relief is intended to minimize "the danger of avoidable loss and unnecessary accrual of damages." 10B Charles Alan Wright, Arthur R. Miller &  Mary Kay Kane, *Federal Practice and Procedure* § 2751 (3d ed. 1998).

31. Defendant's failure to warn that their Faucets contained a defect that caused cracks and/or fractures resulting in extensive property damage, makes declaratory relief with respect to a Rule 23(b)(2) class appropriate.

32. The Rule 23(b)(2) "Declaratory Relief Class" is defined as follows:

> All persons and insurance carriers in the United States who purchased a Faucet from Defendant and/or provide insurance coverage for and/or own or reside in a structure that contains a Faucet.

33. Plaintiff also proposes a Rule 23(b)(3) "Damages Class" defined as follows:

> All persons and insurance carriers in the United States who (i) purchased a defective Faucet from Defendant, and/or (ii) own or reside in a structure where a defective Faucet failed, and/or (iii) all insurance companies who insured properties damaged by the defective Faucets and made payments for damages incurred, and/or (iv) all others subrogated to the rights of those whose property suffered damages as a result of a defective Faucet.

34. Excluded from the class members are Defendant, any entities in which Defendant has a controlling interest, any of Defendant's parents, subsidiaries, affiliates, officers, directors, employees, and members of such person's immediate families, the presiding

judge(s) in this case and their immediate family, and any class member who has entered into a binding release for their claim with Defendant and/or is barred from bringing a claim due to a judgment entered in a court of law pursuant to the doctrines of res judicata and/or collateral estoppel.

## **RULE 23(a), (b)(2), and (b)(3) CRITERIA**

35. <u>Numerosity</u>: Plaintiff is informed and believes that Defendant is aware of at least thirty-sox (30) other claims against it for defective Faucets, totaling over one million dollars in property damages alone. Additionally, Plaintiff believes, and therefore avers, that Defendant's Faucets have failed at least thirty-six times throughout the United States resulting in damages. Accordingly, the class members consist of, at minimum, thirty-five others, making joinder of all class members impracticable.

36. <u>Commonality</u>: Questions of law and fact are common to the Plaintiff, the Declaratory Relief Class and the Damages Class, and predominate over questions affecting only individual members, including, inter alia, the following:

    a.  Whether the design of the Faucets is defective;

    b.  Whether the Faucet label provides adequate instruction for its useful life, its warranty, as well as adequate warnings regarding its propensity to fail;

    c.  Whether Defendant continued to sell the defective Faucets while knowing of the defect;

    d.  Whether the Plaintiff and the members of the Damages Classes are entitled to damages; and

    e.  Whether the Defendant violated Connecticut law and is strictly liable for all damages resulting from the failure of the defective Faucets.

37. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Classes described above, and arise from the same course of conduct by Defendant. The relief Plaintiff seeks is typical of the relief sought for the absent Class members.

38. <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of all absent Class members. Plaintiff is represented by counsel competent and experienced in consumer protection, products liability, and class action litigation.

39. <u>The Prerequisites of Rule 23(b)(2) are Satisfied for a Declaratory Relief Class</u>: The prerequisites to maintaining a class for declaratory equitable relief pursuant to Fed. R. Civ. P 23(b)(2) exist as Defendant has acted or refused to act on grounds generally applicable to the Class thereby making appropriate declaratory and equitable relief with respect to the class as a whole. The central issues whether the Defendant's Faucets were defectively designed; and whether warning was provided of the defect and propensity for failure; is the same for all Class members. There is an economy to class treatment of this central question because its resolution has the potential to eliminate the need for continued and repeated litigation across the country related to the Faucets and the reasons for their repeated failure.

40. <u>The prerequisites of Rule 23(b)(3), Predominance and Superiority, are Satisfied for the Damages Classes</u>: Plaintiff and the Class have all suffered damages as a result of the Defendant's defective Faucets. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Moreover, absent a class action, most Class members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.

41. The prosecution of separate actions by the individual Class members would create a risk of inconsistent and varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each class member.

42. Defendant's actions are generally applicable to the Classes as a whole, and Plaintiff seeks, inter alia, equitable remedies on behalf of a (b)(2) class and damages on behalf of (b)(3) classes.

## CAUSES OF ACTION
## COUNT I
## NEGLIGENCE V. WATERWORKS

43. Plaintiff repeats, re-alleges, and incorporates by reference the allegations contained in all of the preceding paragraphs as if expressly rewritten and set forth herein.

44. The losses suffered by Plaintiff and the putative Class members and the resulting damages were proximately caused by the negligence and breaches of duty owed by

Waterworks, its agents, servants, and/or employees, including, but not limited to, the following:

a.  Failing to properly design the Faucet and/or its parts;

b.  Failing to properly manufacture the Faucet and/or its parts;

c.  Failing to adequately test the Faucet to assess, determine, eliminate, and/or reduce the risk and/or likelihood of water leaks;

d.  Placing in the channels of trade a Faucet that Waterworks knew or with reasonable care, should have known, was unreasonably dangerous and/or unsafe;

e.  Marketing an inherently unsafe and/or dangerous product;

f.  Misrepresenting that the Faucet was safe when Waterworks knew or should have known that the product was dangerous and/or unsafe;

g.  Failing to warn consumers that the Faucet could cause and/or contribute to water losses and/or water damages;

h.  Failing to make appropriate recommendations concerning the use and/or maintenance of the Faucet;

i.  Failing to properly withdraw and/or recall the Faucet and/or its component parts from the marketplace;

j.  Failing to comply with applicable federal, state, and/or municipal statutes and/or regulations concerning the design, manufacture, packaging, distribution, marketing, and/or sale of the Faucet; and,

k.  Otherwise failing to exercise reasonable care under the circumstances that then and there existed.

WHEREFORE, Plaintiff demands judgment against Waterworks in an amount that will adequately compensate Plaintiff and the putative Class members for their losses, together with interest, fees and costs.

## COUNT II
## BREACH OF WARRANTIES V. WATERWORKS

45. Plaintiff repeats, re-alleges, and incorporates by reference the allegations contained in all of the preceding paragraphs as if expressly rewritten and set forth herein.

46. Waterworks designed, manufactured, fabricated, constructed packaged, marketed, and/or sold the Faucet.

47. Waterworks expressly and impliedly warranted that the Faucet was safe, merchantable, and/or fit for its intended uses. Waterworks was a merchant with respect to goods of the kind involved in the losses suffered by the Plaintiff and putative Class members. Waterworks knew or had reason to know of the particular purpose for which the goods were required, and that the consumers were relying on Waterworks' skill, expertise, and/or judgment to select and/or furnish suitable goods.

48. Waterworks also knew or had reason to know that the Plaintiff, its insured, and putative Class members using the Faucets relied on the warranties made by Waterworks.

49. Waterworks breached its warranties because the Faucets were unsafe, not of merchantable quality, and/or unfit for their intended uses and purposes.

50. The damage and destruction to, and the loss of use of, real and personal property of the Plaintiff, its insured, and putative Class members, was a direct and proximate result of the breaches of warranties by Waterworks. Due notice has been given to Waterworks of its breaches of warranty.

51. As a direct and proximate result of the losses, Plaintiff and putative Class members incurred costs and suffered damages.

WHEREFORE, Plaintiff demands judgment against Waterworks in an amount that will adequately compensate Plaintiff and the putative Class members for their losses, together with interest, fees and costs.

## COUNT III
## PRODUCT LIABILITY/STRICT LIABILITY V. WATERWORKS

52. Plaintiff repeats, re-alleges, and incorporates by reference the allegations contained in all of the preceding paragraphs as if expressly rewritten and set forth herein.

53. Waterworks designed, created, manufactured, packaged, labeled, sold, supplied, marketed, and/or distributed the Faucets with inadequate warnings and/or in a defective and/or unreasonably dangerous condition violation of law, in each of the following ways:

   a. Failing to properly design the Faucet and/or its parts;

   b. Failing to properly manufacture the Faucet and/or its parts;

   c. Failing to adequately test the Faucet to assess, determine, eliminate, and/or reduce the risk and/or likelihood of water leaks;

   d. Placing in the channels of trade a Faucet that Waterworks knew or with reasonable care, should have known, was unreasonably dangerous and/or unsafe;

   e. Marketing an inherently unsafe and/or dangerous product;

   f. Misrepresenting that the Faucet was safe when Waterworks knew or should have known that the product was dangerous and/or unsafe;

   g. Failing to warn consumers that the Faucet could cause and/or contribute to water losses and/or water damages;

   h. Failing to make appropriate recommendations concerning the use and/or maintenance of the Faucet;

   i. Failing to properly withdraw and/or recall the Faucet and/or its component parts from the marketplace;

   j. Failing to comply with applicable federal, state, and/or municipal statutes and/or regulations concerning the design, manufacture, packaging, distribution, marketing, and/or sale of the Faucet; and,

   k. Otherwise failing to exercise reasonable care under the circumstances that then and there existed.

54. The damage and destruction to, and the loss of use of, real and personal property of the Plaintiff, its insured, and putative Class members, was a direct and proximate result of Waterworks' failure to adequately warn and/or by virtue of the Faucet's defective and/or unreasonably dangerous condition.

55. As a result of the losses, Plaintiff and putative Class members have incurred costs and suffered damages.

WHEREFORE, Plaintiff demands judgment against Waterworks in an amount that will adequately compensate Plaintiff and the putative Class members for their losses, together with interest, fees and costs.

## COUNT IV
## BREACH OF MAGNUSON-MOSS WARRANTY ACT

56. Plaintiff repeats, re-alleges, and incorporates by reference the allegations contained in all of the preceding paragraphs as if expressly rewritten and set forth herein.

57. Waterworks is an entity engaged in the business of distributing and/or selling consumer goods at a retail store in the state of Connecticut, and at retail stores across the United States.

58. The Faucet is the type of product which is ordinarily purchased primarily for personal, family, or household use.

59. Plaintiff and its insured discovered within weeks after purchase and during the warranty period that the Faucet was unreasonably dangerous, unsafe, and/or defective, when the Loss occurred.

60. Pursuant to the Magnuson-Moss Warranty Act (15 U.S.C. § 2301 et seq.), the sale of the Faucet to Plaintiff's insured was accompanied by Waterworks' implied warranty of merchantability.

61. The implied warranty of merchantability means and includes that the Faucet will comply with each of the following requirements: (1) The Faucet will pass without objection in the trade under the contract description; (2) the Faucet is fit for the ordinary purposes for which such goods are used; (3) the Faucet is adequately contained, packaged, and labeled; and (4) the Faucet will conform to the promises or affirmations of fact made on the container or label.

62. While the implied warranty was in effect, the Faucet failed as the result of being unreasonably dangerous, unsafe, and/or defective. The existence of the foregoing amounts to a breach of the implied warranty of merchantability because the product (1) does not pass without objection in the trade under the contract description; (2) is not fit for the ordinary purposes for which such goods are used; (3) is not adequately

contained, packaged, and labeled; and (4) does not conform to the promises or affirmations of fact made on the container or label.

63. Plaintiff and putative Class members have been damaged by Waterworks' failure to comply with its obligations under the implied warranty of merchantability and in accordance with the Magnuson-Moss Warranty Act.

WHEREFORE, Plaintiff demands judgment against Waterworks in an amount that will adequately compensate Plaintiff and the putative Class members for their losses, together with interest, fees and costs.

## DEMANDS FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court enter a judgment against Defendant and in favor of Plaintiff, and grant the following relief:

1. Determine that this action may be maintained as a class action with respect to the Classes identified herein; certify a class action pursuant to both Rules 23(b)(2) and (3) with respect to particular issues if appropriate; and designate and appoint the named Plaintiff herein and their counsel to serve as Class Representative and Class counsel;

2. Grant Plaintiff and the Rule 32(b)(3) Damages Class awards of damages in such amount to be determined at trial or as provided by applicable law'

3. Grant the Plaintiff and members of the Classes their costs of suit, including reasonable attorneys' fees, and expenses, as provided by law; and

4. Grant the Plaintiff and the members of the Classes such other, further, and different relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court.

## JURY DEMAND

The Plaintiff hereby demands a trial by jury on all claims so triable.

Respectfully Submitted,

Plaintiff,

By its attorneys,


*/s/ John A. Donovan III*

John A. Donovan III, Esq., ct29227
Sloane & Walsh, LLP
148 Eastern Boulevard, Suite 105
Glastonbury, CT 06033
Tel:     (860) 375-1877
Fax:     (860) 430-6999
Email: jdonovan@sloanewalsh.com

Dated:  August 5, 2022

# EXHIBIT B

# MANUFACTURER PRODUCTION AGREEMENT

This Manufacturer Production Agreement (the "Agreement") is made by and between P.D.S. Associates, Inc. d/b/a Waterworks, a corporation organized and existing under the laws of the State of Connecticut and having an address at 29 Park Avenue, Danbury, CT 06810 ("Waterworks") and *TETARD HAUDIQUEZ GRISONI* , a *SA COMPANY* having an address at *35 RUE TOURNIERE. 80535 BETHENCOURT* ("Manufacturer"), and is effective as of *JANUARY, 1ST 99*, 1998 (the "Effective Date").

2010

## WITNESSETH:

WHEREAS, Waterworks has developed certain designs, ideas, themes and/or concepts (collectively, the "Line Designs," representations or descriptions of which are attached as Exhibit A hereto) for a line of plumbing fixtures *[and/or other products]* (collectively, such plumbing fixtures *[and /or other products]* are called the "Line Products"); and

WHEREAS, Waterworks desires to grant to Manufacturer, and Manufacturer desires to accept, an [exclusive] license to manufacture the Line Products for Waterworks and distribute such products to Waterworks and its designees subject to the terms and conditions of this Agreement

NOW THEREFORE, in consideration of the mutual promises set forth herein, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Waterworks and Manufacturer hereby agree as follows:

## 1.    Commitment To manufacture And Distribute Line Products.

Subject to the terms and conditions of this Agreement, Waterworks hereby grants to Manufacturer an exclusive license to manufacture Line Products and distribute such products to Waterworks and/or Waterworks' designees. Manufacturer agrees that it shall develop all prototypes, molds, dies, casts and other manufacturing elements necessary to manufacture the Line Products (collectively, the "Manufacturing Elements"). *Manufacturer agrees that it shall consider and implement reasonable suggestions from Waterworks concerning such development of manufacturing Elements, as Waterworks deems necessary or appropriate. Six month after the Effective Date hereof, and no less frequently than once each calendar year thereafter, manufacturer will provide Waterworks with an inventory of the Manufacturing Elements, detailing their uses, costs, dates of entry into use, and anticipated useful life spans.*

Manufacturer agrees that it shall sell or otherwise distribute Line Products only to Waterworks and/or Waterworks' designees, in quantities sufficient to fulfill in a timely, efficient and or commercially reasonable manner, purchase orders received from Waterworks or Waterworks' designees for such products *[, at Manufacturer's standard prices, discounts and allowances]*. Manufacturer acknowledges that its compensation under this Agreement and in connection with

the Line Products shall be limited solely to its revenues derived from sales of the Line Products as permitted hereunder. Manufacturer agrees that it shall never sell or otherwise distribute Line Products to any individual or entity other than Waterworks and Waterworks' designees.

*[Waterworks agrees that it shall use its commercially reasonable best efforts, consistent with its then-current business practices, to sell (or to have its designees sell) Line Products.]*

Waterworks reserves all rights not explicitly granted to Manufacturer under this Agreement.

## 2. Ownership And Protection Of Line Designs.

Manufacturer acknowledges that the Line Designs, and all rights therin and relating thereto (including without limitation any and all copyright, patent, industrial design, trademark and trade dress rights, collectively, the "Line Design Rights"). Manufacturer shall never challenge Waterworks' ownership of, or the validity of, the Line Design Rights or any registrations or other filings therefor. Should additional designs, ideas , themes and/or concepts be added to the Line Designs during the term of this Agreement, they shall be deemed to be part of the Line Designs for all purposes hereunder. Notwithstanding the preceding provisions of this paragraph, nothing in this Agreement shall limit whatever rights Manufacturer may have, had this Agreement not been made, to make market or otherwise use in any way any discreet, non-decorative configuration element that is incorporated into one or more Line Products *[but that is generic and commonplace in the industry and]* that is not a creative, aesthetic, unique or novel element of the Line Designs.

*[At Waterworks' sole expense,]* Manufacturer agrees to execute and deliver to Waterworks any further documents or instruments and do any and all further acts which Waterworks (or its agents or designees) reasonably requests in order to perfect and confirm Waterworks' ownership of the Line Designs Rights and record such ownership in the United States Copyright Office, the United States patent and Trademark Office and other official offices.

Waterworks shall defend, police, enforce and otherwise protect (collectively, "Enforce") the Line Design Rights at its sole discretion. Manufacturer shall promptly notify Waterworks in writing of any known or suspected violations of the Line Design Rights. *[At Waterworks' sole expense,]* Manufacturer agrees to provide all assistance reasonably requested by Waterworks in order to Enforce the Line Design Rights. Manufacturer shall not otherwise Enforce the Line Design Rights without Waterworks' prior express written consent. All monies and other awards and settlements derived (if any) from such efforts to Enforce the Line Design Rights shall be paid to and retained entirely by Waterworks.

## 3. Quality Of Line Products.

Manufacturer agrees that it will conduct all aspects of manufacture and distribution of Line Products in a manner consistent with industry customs, standards and practices for products similarly positioned and priced. *[Without limiting the foregoing sentence, Manufacturer agrees to <the following objective criteria specified by Waterworks as appropriate>].*

For the purpose of continuous monitoring of the Line Products' quality of the Line Products, as Waterworks deems necessary or appropriate.

### 4. Term and Termination.

This Agreement shall be in effect for a period of five (5) years immediately following the Effective Date.

To the extent that either party is dissatisfied with the business relationship established by this Agreement (due to, for non-limiting example, (i) the Line Products' quality being unacceptable to Waterworks; (ii) manufacturer's slow delivery of Line Products to Waterworks and/or its designees; or (iii) failure to supply quantities of Line Products sufficient to meet purchase order demand), it shall have the right to terminate this Agreement upon providing one hundred eighty (180) days prior written notice to the other, without waiving any rights or claims it may have to recover for breach of contract or other damages or harms. In the event that this Agreement expires or is terminated, each party shall fulfill and honor its respective responsibilities under this Agreement with respect to all open purchase orders and unpaid invoices that may exist as of the effective date of termination.

Notwithstanding the provisions contained in the immediately preceding paragraph, Waterworks shall immediately have the right to terminate this Agreement and its obligations to perform hereunder upon providing written notice to Manufacturer if one or more of the following events occurs; (i) Manufacturer files a petition in bankruptcy; (ii) Manufacturer is adjudicated a bankrupt or insolvent; (iii) manufacturer makes an assignment for the benefit of creditors or an arrangement pursuant to any bankruptcy law; (iv) Manufacturer discontinues or dissolves its business; or (v) a receiver is appointed for Manufacturer or its business, and such receiver is not discharged within thirty (30) days.

*In the event that the Agreement is terminated, Manufacturer will deliver to Waterworks within ten (10) days of the notice of termination all Manufacturing Elements used or intended for use exclusively in connection with the Line Products. Waterworks shall pay to the Manufacturer the scrap value of such Manufacturing Elements, but in no event more than thirty percent (30%) of the aggregate out-of-pocket cost to manufacturer for such manufacturing Elements.*

Unless the Agreement is otherwise terminated, this Agreement shall automatically renew for additional five (5) year terms, each such five (5) year term commencing upon expiration of the immediately preceding term.

### 5. Indemnification.

Manufacturer agrees to indemnify and hold harmless Waterworks for any and all costs and claims arising from or related to (i) manufacturer's activities conducted pursuant to this Agreement and\or (ii) any breaches by Manufacturer of this Agreement (collectively, the immediately foregoing (i) and (ii) are called "Manufacturer's Indemnification Obligation"). Waterworks agrees to indemnify and hold harmless manufacturer for any and all costs and claims arising from or related to (i) Waterworks' activities conducted pursuant to this Agreement and/or (ii) any breaches by Waterworks of this Agreement, provided that such costs and claims which arise from or other wise relate to Manufacturer's Indemnification Obligation are excluded.

### 6. Confidentiality Of This Agreement.

That certain Non-Disclosure Agreement [*dated*_____ ] into which Waterworks and Manufacturer have entered survives and is expressly incorporated into this Agreement as though it were a part hereof. Waterworks and Manufacturer agree that the terms of this Agreement, as well as the fact of the Agreement's existence, shall be deemed to be part of "Waterworks' Information" as that term is defined and used in the Non-disclosure Agreement.

### 7. Notice.

All notices and other communications hereunder shall be in writing and shall be sent via Reputable commercial overnight courier. All notices shall be deemed delivered to the recipient on the date actually received, or five (5) days after the notice is sent via a reputable commercial overnight courier, whichever is earlier. All notices shall be sent to each party at the address first written above, to the attention of the respective individuals who have executed this Agreement below. Each party may change its notice address and its notice receipt individual by providing written notice of same to the other.

### 8. General Provisions.

This Agreement contains the entire understanding and agreement between the parties hereto with respect to the subject matter hereof and supersedes all prior oral or written understandings, communications or agreements relating thereto (except as otherwise explicitly provided in paragraph 6 hereof). This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns. This Agreement may not be modified, discharged or terminated orally, nor may any of the provisions hereof be waived except by a writing duly executed by both parties. If any provision of this Agreement or portion thereof shall be held void or unenforceable, all other provisions and portions thereof shall continue in full force and effect. Nothing contained in this Agreement shall be construed to render the parties hereto partners, joint venturers, employer and employee, principal and agent, and neither party shall have the power to obligate or bind the other party in any manner whatsoever. Each party has had a full opportunity to consult with counsel and review and consider this Agreement. No provision(s) of this Agreement shall be construed against a party due to the fact (actual or alleged) that such party drafted or revised such provision(s). This Agreement shall be construed and interpreted in accordance with the internal laws of the State of Connecticut applicable to agreements made and to be performed wholly within the State of Connecticut. Any action or proceeding concerning this Agreement shall be brought only in the state and/or federal courts sitting in the State of Connecticut, County of Fairfield, and each party irrevocably submits to the exclusive jurisdiction of such courts and waives any objection to venue laid therein.

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first written above.

P.D.S. ASSOCIATES, INC. and WATERWORKS

By: A. Peter Sallick
Its: President

STATE OF CONNECTICUT

ss:

COUNTY OF FAIRFIELD

On this 2 3 day of _February, 1999_, before me personally appeared _Peter Sallick_, to me known, and known to me to be the individual described and who executed the foregoing instrument (or proved to me on the basis of satisfactory evidence), and (s)he duly acknowledged to me that (s)he executed the same for the purpose therein set forth.

NOTARY PUBLIC

My commission expires:      **KAREN A. TRACY**
                            **My Commission Expires 3/31/2000**

MANUFACTURER

By: _M. GOSSE_
Its: _GENERAL MANAGER_

STATE OF _BETHENCOURT._

ss:

COUNTY OF _FRANCE_

On this _1st_ day of _JANUARY_ 199_9_, before me personally appeared _MICHEL GOSSE._, to me known, and known to me to be the individual described and who executed the foregoing instrument (or proved to me on the basis of satisfactory evidence), and (s)he duly acknowledged to me that (s)he executed the same for the purpose therin set forth.

NOTARY PUBLIC

My Commission expires: